UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURENCE STEPNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 3548 |
| | ) | |
| CLEO JOHNSON and JOHN DOE in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendant Cleo Johnson's ("Johnson") motion to dismiss Plaintiff Laurence Stepney's ("Stepney") Third Amended Complaint (the "Complaint"), Dkt. 67, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Dkt. 74. For the reasons set forth below, Johnson's motion is denied as to Count I and granted as to Counts II and III.

**BACKGROUND**

For purposes of the instant motion, the following well-pleaded allegations derived from the Complaint are accepted as true. *Ed Miniat. Inc. v. Global Life Ins. Grp., Inc.*, 805 F.2d 732, 733 (7th Cir. 1986); *Dilallo v. Miller & Steeno, P.C., et al.*, No. 16 C 51, 2016 WL 4530319, at *1 (N.D. Ill. Aug. 30, 2016). This principle, however, does not apply to legal conclusions; the Court will not consider conclusory

claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in favor of Stepney and construes all allegations in the light most favorable to him. *Ed Miniat. Inc.*, 805 F.2d at 733; *Dilallo*, 2016 WL 4530319, at *1.

Stepney, who, as of May 24, 1996, is a convicted sex offender, must register as such annually. Dkt. 67 ¶¶ 12–13; *see* 730 ILCS 150.0/6. Additionally, should his address or contact information change, Stepney is required to inform a reporting agency. Dkt. 67 ¶ 13. On April 13, 2010, police arrested Stepney because he did not register his new address after he moved. *See id.* ¶ 14; 730 ILCS 150.0/6. Thereafter, on November 15, 2011, Stepney was convicted of a Class 3 felony. Dkt. 67 ¶ 15. A judge sentenced Stepney to two (2) years in prison, subject to time served, and a one (1) year mandatory supervised release ("MSR") term. *Id.* at ¶ 15–16. Cook County had custody over Stepney from April 4, 2010 until November 18, 2011. *Id.* at ¶ 17. He served a total of five hundred eighty four (584) days in Cook County's physical custody. *Id.* at ¶ 18. Cook County transferred Stepney to the Illinois Department of Corrections (the "IDOC") on November 18, 2011. *Id.*

Stepney claims that, when he entered the North Reception and Classification Center (the "NRC") at Stateville Correctional Center ("Stateville") within the IDOC on November 18, 2011, he "was entitled to be released from incarceration to serve his term of MSR, having served nineteen (19) months and five (5) days with accompanying good time credits on a two-year sentence." *Id.* at ¶ 19. However, the IDOC allegedly follows a procedure whereby "all sex offenders who enter [the] IDOC

from county custody having served their sentence and [been] approved for parole, will remain in IDOC custody for at least a few additional days," which provides the IDOC with time "to assign an agent to investigate the inmate's proposed housing site and approve or deny it." *Id.* at ¶ 37. This process has come to be known "as 'turnaround' or 'violation at the door.'" *Id.* at ¶ 32. Thus, upon entry into the IDOC's physical custody, in accordance with standard protocol, the IDOC cited Stepney for failing to have approved housing. *Id.* at ¶ 31. As a result, the IDOC readmitted Stepney into its physical custody on that same day. *Id.* at ¶ 32.

To be released from the IDOC's physical custody on MSR, Stepney was required to have approved housing, among other conditions. *Id.* at ¶ 20. A suitable housing location would be one that fulfills the general MSR housing conditions and has a landline telephone, necessary for electronic monitoring. *See id.* at ¶¶ 21–22. On November 18, 2011, Stepney allegedly provided Johnson, a counselor at the NRC at Stateville, with two proposed housing sites for investigation. *Id.* at ¶¶ 9–10, ¶ 24. The addresses included: 3861 West Maypole ("Maypole") and 1130 East 82nd Street ("82nd"). *Id.* Stepney claims that Johnson recorded one of these addresses "on a hand-written form." *Id.* at ¶ 33. To investigate and approve or deny an inmate's suggested housing site, an IDOC employee enters the proposed address into a program called the Offender Tracking System (the "OTS"). *See id.* at ¶ 23. From the OTS, a supervisor assigns the recommended housing site to an agent for investigation. *See id.* Agents are required to personally visit the location to verify whether a site is

suitable for electronic monitoring. *See id.* Stepney contends that the responsibility to enter his suggested housing sites into the OTS fell on Johnson, and that he did not enter the addresses into the OTS, nor were they "assigned to a supervisor[,] or investigated by an agent." *Id.* at ¶ 23, ¶ 26, ¶ 33. According to Stepney, had Johnson entered his proposed addresses into the OTS, it would be reflected in the system. *See id.* at ¶¶ 27–28.

Allegedly, a counselor by the first or last name of Kahn ("Counselor Kahn") notified Stepney that, as of November 22, 2011, he did not have any addresses awaiting investigation in the OTS. *Id.* at ¶ 34. Stepney states that he then provided Counselor Kahn with the same addresses. *Id.* Stepney claims that on February 13, 2012 the IDOC investigated one of his proposed housing sites for the first time. *See id.* at ¶ 29, ¶ 30, ¶ 35. It is unknown whether the IDOC investigated Maypole or 82nd at this time because, without specifying an address, the agent's notes read: "Placement denied, address does not exist, no number to contact host." *Id.* at ¶ 35 (internal quotation marks omitted). The IDOC investigated Maypole on February 23, 2012, and deemed it unsuitable.[1] *See id.* at ¶ 36. After February 23, 2012, the IDOC did not investigate any additional housing sites. *Id.* Stepney remained in the IDOC's physical custody until May 18, 2012, when the IDOC released him to 82nd. *Id.* at ¶ 38. Since Stepney allegedly provided Johnson with 82nd for investigation on

[1] We acknowledge that Stepney allegedly submitted two host sites to the IDOC for investigation. Based on the allegations, is clear that the IDOC investigated Maypole and determined that it was unsuitable for MSR. Less clear is whether the initial investigation, where the placement was denied because the address purportedly did not exist, was of 82nd or Maypole.

November 18, 2011, he claims that he spent "six (6) additional months in IDOC custody because his proposed housing site was never investigated." *Id.*

Stepney asserts that he exhausted the available inmate grievance procedures, and that he grieved informally to Counselor Kahn on November 22, 2011. *See id.* at ¶ 39–40. Stepney states that on December 5, 2011, he alerted the Illinois Prison Review Board (the "PRB") of his alleged "prolonged incarceration" in a "five (5) page statement, explaining that he gave Johnson his proposed housing sites and she failed to put them in the computer system or assign them to a supervisor for assignment to an agent and investigation." *Id.* at ¶ 41. On January 5, 2012, Stepney allegedly wrote to the PRB "regarding [the] IDOC's failure to investigate his proposed housing site." *Id.* at ¶ 42. "On February 27, 2012, . . . [Stepney] filed an Offender's Grievance, alleging that he provided addresses and phone numbers to Johnson for investigation," and that she did not enter them into the OTS. *Id.* at ¶ 43.

Stepney's Complaint contains three counts alleging a violation of his rights under the Eighth and Fourteenth Amendments. *See generally* Dkt. 67. Each of the three counts outlines four prayers for relief against Defendants Johnson and John Doe (collectively, "Defendants") jointly and severally: (i) compensatory damages; (ii) punitive damages; (iii) attorneys' fees and costs; and (iv) such other relief as the Court deems proper and necessary. *Id.* p. 8 ¶¶ A–D, p. 10–11 ¶¶ A–D, p. 12 ¶¶ A–D. Stepney has issued a jury demand for all such triable claims. *Id.* at p. 12. On July 12,

2016, Johnson moved to dismiss the Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6). Dkt. 74-1, p. 1.

## **LEGAL STANDARD**

The purpose of a Rule 12(b)(6) motion to dismiss is to "'test[ ] the sufficiency of the complaint, not the merits of the case.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012) (quoting *McReynolds v. Merrill Lynch & Co.*, No. 08 C 6105, 2011 WL 1196859, at *2 (N.D. Ill. Mar. 29, 2011), *aff'd* 694 F.3d 873 (2012)). The allegations in a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must describe his or her claims "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A plaintiff need not offer "detailed factual allegations," but he or she must provide enough factual support "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

A claim must be facially plausible, meaning that the pleadings permit a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Should a complaint "plead[ ]

facts that are ‘merely consistent with’ a defendant’s liability, it ‘stops short of the line between possibility and plausibility of entitlement to relief.’” *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). “Determining whether a complaint states a plausible claim for relief” is “a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” *Id.* at 679.

## DISCUSSION

### I. Count I: Eighth Amendment

In his motion to dismiss, Johnson argues that “Count I should be dismissed because Plaintiff fails to state a claim for deliberate indifference against Johnson, who acted according to state law and without the culpable state of mind required to state a claim under the Eighth Amendment.” Dkt. 74-1, p. 2. Stepney, in response, contends that he has alleged a plausible claim for relief, and that therefore, Count I should not be dismissed. Dkt. 76, p. 2–7. The Court agrees with Stepney.

“[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* that narrow class of deprivations involving ‘serious’ injury inflicted by prison officials acting with a culpable state of mind.” *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) (Thomas, J., dissenting) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). “A plaintiff states a claim for an Eighth Amendment violation if he is detained in jail for longer than he should have been due to the deliberate indifference of corrections officials.” *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015). To ultimately prevail,

Stepney must "prove that the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was the result of the defendants' 'deliberate indifference.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Deliberate indifference "l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "To establish deliberate indifference, [a defendant] must meet 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (quoting *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)); *see Armato*, 766 F.3d at 721; *Bd. v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Stepney asserts enough plausible facts to survive dismissal. Johnson argues that Stepney "fails to allege beyond the speculative level that Defendant knew or should have known that Plaintiff was eligible to be released, that Plaintiff was in fact eligible for release and that, in spite of this knowledge, she deliberately held him beyond his period of incarceration." Dkt. 74-1, p. 6. Johnson, however, fails to recognize that Stepney "need not *prove* anything" at this stage of litigation. *See Fuentes v. Sheahan*, No. 03 C 4892, 2004 WL 1611607, at *4 n.3 (N.D. Ill. July 19, 2004) (emphasis added).

Stepney pleads enough facts to plausibly allege that Johnson knew or should have known that he was at least eligible to be released from the IDOC's physical

custody. For example, Stepney claims that Johnson's responsibilities at Stateville included handling the release of inmates. Dkt. 67 ¶ 9. Further, Stepney contends that Johnson prepared his release documents, including the ones which allegedly listed 82nd as a proposed housing site, on November 18, 2011. *See id.* at ¶ 25.

Additionally, Stepney pleads enough facts to plausibly assert that he was, in fact, at least eligible for release, subject to having approved housing. Johnson is not incorrect in arguing that even if she had entered Stepney's suggested addresses into the OTS on November 18, 2011, an agent could not have investigated them the same day due to the IDOC's "turnaround" policy, so the IDOC would have nonetheless denied Stepney release on November 18, 2011. *See* Dkt. 74-1, p. 6–7; Dkt. 76, p. 4; Dkt. 78, p. 7–8. Moreover, although there is no guarantee, as Stepney would like us to believe, that he would have been released no more than two weeks later, it likewise does not follow that Stepney would be denied MSR outside of the IDOC's physical custody until May 18, 2012. *See id.* While Stepney's eventual release or discharge to 82nd—on May 18, 2012—may not prove "that he would have been approved for release on MSR if it were not for [Johnson's] failure to input the address into" the OTS, or that 82nd "would have met all of the conditions of his MSR if it were investigated by an IDOC agent," it surely is sufficient to provide Johnson with "fair notice of what the . . . claim is" and its grounds. *Twombly*, 550 U.S. at 545; *see* Dkt. 74-1, p. 7–8; Dkt. 76, p. 6–7; Dkt. 78, p. 2–4. This fact, coupled with the lack of specificity regarding whether the IDOC denied Maypole or 82nd on February 13,

2012, surpasses "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and is sufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Finally, Stepney pleads sufficient facts at this juncture to plausibly suggest that, despite Johnson's knowledge, she deliberately held Stepney beyond his period of incarceration. Here, Stepney asserts the lack of an electronic trail demonstrating that Johnson entered the addresses which Stepney allegedly provided to her on November 18, 2011 into the OTS. Dkt. 67 ¶ 27–28, ¶ 34. Further, Stepney claims that Counselor Kahn informed him that the OTS did not indicate that any of his proposed addresses were listed as awaiting investigation as of November 22, 2011. *Id.* at ¶ 34. Stepney alleges that it was Johnson's duty to begin the investigation and approval or denial process by entering information into the OTS. *See id.* ¶ 23, ¶ 26, ¶ 33. While she may not have had personal involvement in assigning sites for investigation, or in the actual investigation of the sites, "personal responsibility is not limited to those who participate in the offending act." *Childress*, 787 F.3d at 439–40; *see* Dkt. 78, p. 6–7. Drawing all reasonable inferences in Stepney's favor and construing all allegations in the light most favorable to him, Johnson at least had knowledge that her action or inaction—entrance of proposed housing sites into the OTS—is what "gets the ball moving," as thereafter, a supervisor assigns the proposed housing site from the OTS to an agent, who will subsequently investigate it. *Ed Miniat. Inc.*, 805 F.2d at 733; *Dilallo*, 2016 WL 4530319, at *1; *see* Dkt. 67 ¶ 23; Dkt. 76, p. 4–6.

Thus, Stepney has pleaded enough facts to plausibly allege that Johnson was familiar with the "violation at the door" policy, implemented it in Stepney's case, and was aware that Stepney may stay incarcerated until he either served his MSR term or satisfied all prerequisites for release. *Armato v. Grounds*, 944 F. Supp. 2d 627, 631 n.3 (C.D. Ill. 2013), *aff'd*, 766 F.3d 713 (7th Cir. 2014); *see* Dkt. 76, p. 3–4; Dkt. 78, p. 4. Stepney need not *prove* that he was "detained in jail for longer than he should have been due to the deliberate indifference of" Johnson at this stage; rather, Stepney must present "a short and plain statement of the claim showing that the pleader is entitled to relief," as a Rule 12(b)(6) motion "'tests the sufficiency of the complaint, not the merits of the case.'" *Childress*, 787 F.3d at 439; *McReynolds*, 694 F.3d at 878 (quoting *McReynolds*, 2011 WL 1196859, at *2); Fed. R. Civ. P. 8(a)(2); *see* Dkt. 78, p. 6. Stepney has done so. The Court, therefore, denies Johnson's motion to dismiss Count I, irrespective of how weak the facts may ultimately prove to be.

## II. Count II: Fourteenth Amendment Procedural Due Process

Johnson argues that Counts II and III should be dismissed because Stepney did not have a fundamental right or liberty interest to MSR outside of the IDOC's physical custody, nor was he deprived of any such right or interest without due process. Dkt. 74-1, p. 2. In Count II of the Complaint, Stepney alleges that because he served his two-year prison sentence, he was entitled to be released on MSR on November 18, 2011. Dkt. 67 ¶ 47. Stepney also argues that he "had an interest in retaining his status as parolee" as a result of the "turnaround" practice, and therefore

Johnson deprived Stepney of his right to procedural due process by allegedly "fail[ing] to properly investigate [Stepney's] proposed home site or take any steps towards investigation." *Id.* at ¶ 59. The Court disagrees: Stepney did not have an identifiable liberty interest from which he could be deprived due process. Moreover, Stepney was provided with ample due process.

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013) (citing U.S. CONST. amends. V, XIV). The government must adhere to reasonable procedures so as not to mistakenly deprive one of his or her liberty interests. *Atkins v. City of Chi.*, 631 F.3d 823, 827 (7th Cir. 2011). "In determining what is reasonable 'the court must consider the weight of the interest at stake, the risk of error, and the costs of additional process.'" *Id.* (quoting *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006)). To succeed on a procedural due process claim, a plaintiff must show that he: (i) has "a cognizable liberty interest under the Fourteenth Amendment;" (ii) was "deprived of that liberty interest;" and (iii) "the deprivation was without due process." *Murdock v. Walker*, No. 08 C 1142, 2014 WL 916992, at *6 (N.D. Ill. Mar. 10, 2014) (citing *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)). In the instant case, Stepney argues that he had a liberty interest in being released on MSR, rather than serving his MSR in the IDOC's physical custody, and that keeping him in the IDOC's physical custody during his MSR period was a violation of that liberty interest. *See* Dkt. 67, p. 9–10.

“A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word ‘liberty,’ or it may arise from an expectation or interest created by state laws or policies.” *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Illinois Supreme Court held in *Hill v. Walker* “that the Illinois parole statute does not create a legitimate expectation of parole that rises to the level of a liberty interest protected by procedural due process.” 241 Ill. 2d 479, 487–88 (2011). Illinois’s parole regime is discretionary, so it “has not created a liberty interest by establishing an entitlement to parole based on certain criteria.” *U.S. ex rel. Neville v. Ryker*, No. 08 C 4458, 2009 WL 230524, at *4 n.2 (N.D. Ill. Jan. 30, 2009); *see Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 8 (1979) (“[T]here is no prescribed or defined combination of facts which, if shown, would mandate release on parole.”). Illinois simply “*allows* the release of inmates from prison on MSR or parole . . . before the end of their criminal sentences.” *Murdock*, 2014 WL 916992, at *1 (emphasis added) (citing *People ex rel. Abner v. Kinney*, 195 N.E.2d 651, 653 (1964)); *cf.* Dkt. 67 ¶ 19 (claiming that “upon entry to NRC, Plaintiff was *entitled* to be released from incarceration to serve his term of MSR”) (emphasis added). The Illinois legislative framework splits authority: the PRB has the power to establish conditions for an inmate’s release and determine whether violations thereof should result in a revocation of release, while the IDOC’s role is to “retain[ ] custody of all prisoners released on parole and . . . supervis[e] those persons during their release ‘in accord with the conditions set by the [PRB].’” *Armato*, 766 F.3d at 718 n.2

(citing 730 ILCS § 5/3–3–1, 3–14–2 (2012)); *Murdock*, 2014 WL 916992, at *2 (citing 730 ILCS 5/3-14-2). Stated plainly, inmates remain in the *legal* custody of the IDOC while on MSR or parole, regardless of whether they are in the IDOC's *physical* custody; determination of this is in the PRB's sole discretion. *See Murdock*, 2014 WL 916992, at *2.

In the instant matter, Stepney was purely *hoping* to be released early from the IDOC's *physical* custody; he did not have a liberty interest with due process protections, and his claim fails. *Id.* at *6; *see Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 2001). In arguing that he was deprived of a liberty interest without due process of law, Stepney cites to *Murdock*, mistakenly analogizing the facts in *Murdock* to those at hand. *See* Dkt. 76, p. 8.

The plaintiffs in *Murdock* either were not or would not be released from prison on their MSR release date for failure to secure approved housing. *Murdock*, 2014 WL 916992, at *1. Consequently, plaintiffs alleged a violation of their due process rights, among others. *Id.* The plaintiffs in *Murdock*, unlike Stepney, did not have a mere "'hope' for or a 'unilateral expectation' of early release"—they were *granted* release. *Id.* at *6. As a general rule, the United States Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7; *see U.S. ex rel. Slaughter v. Hulick*, No. 5 CV 4762, 2006 WL 1543930, at *2 (N.D. Ill. May 26, 2006). The Court in *Murdock*, however, concluded that plaintiffs had a "synthetic" or

"cognizable" liberty interest in being released from prison because the PRB had already *approved* plaintiffs for early release. *Murdock*, 2014 WL 916992, at *6 (emphasis added). The moment that the PRB did so, "that approval became a form of statutory liberty that could not be revoked without appropriate procedures." *Id.* (citing *Carter v. Gaetz*, No. 09 C 517, 2010 WL 1657296, at *1 (S.D. Ill. Apr. 23, 2010)). Here, in contrast, the PRB did not approve Stepney for release. *See* Dkt. 74-1, p. 10, p. 11; Dkt. 76, p. 8. Stepney, therefore, had a simple hope, not an entitlement, for release. Thus, Stepney was not "deprived of a liberty interest, requiring the protections of due process." *See Murdock*, 2014 WL 916992, at *7.

Citing to case law from the Central and Southern Districts of Illinois, Stepney resorts to a different argument, contending that he "had a liberty interest in retaining his parole status,"[2] which attached when he "was 'released' on parole[ ] and readmitted as a violator on November 18, 2011," referring to "violating an offender at the door," or "the 'turnaround practice' of the IDOC." Dkt. 76, p. 8. Stepney alleges that Johnson deprived him of a liberty interest when she readmitted him into the IDOC's physical custody and did not enter his proposed sites into the OTS, beginning the investigation process. *See* Dkt. 67 ¶ 33; Dkt. 76, p. 8; *Armato*, 766 F.3d at 718 n.2 (citing 730 ILCS § 5/3–3–1, 3–14–2 (2012)); *Crayton v. Duncan*, No. 15-CV-399-

[2] The Seventh Circuit has acknowledged a parolee's liberty interest in maintaining his or her status as parolee: "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee." *King v. United States*, 492 F.2d 1337, 1342 (7th Cir. 1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480–82 (1972)); *see Greenholtz*, 442 U.S. at 10 ("The differences between an initial grant of parole and the revocation of the conditional liberty of the parolee are well recognized.").

NJR, 2015 WL 2207191, at *5 (S.D. Ill. May 8, 2015) ("Plaintiff was indeed paroled, if only as a formality, before he was 'readmitted' to the prison . . . . In this circumstance, Plaintiff has a protected liberty interest."). The "turnaround" procedure "is a legal fiction wherein it is imagined that the offender is released from custody, placed on MSR, but when he leaves the institution he is in violation of his supervision terms and he is immediately placed back in custody." *Armato*, 944 F. Supp. 2d at 631 n.3. In actuality, inmates simply stay incarcerated until they satisfy MSR prerequisites. *Id.* The inmate may stay incarcerated until he satisfies such conditions, or the MSR term expires. *Id.*

The Court acknowledges that Stepney's second argument raises a predicament that is not insignificant, but it is not one for us to address. *See, e.g.*, *Cordrey v. Prisoner Review Bd.*, 21 N.E.3d 423, 432 (Ill. 2014) ("[W]e are not insensitive to the plight of inmates that are violated at the door . . . . It may turn out that the factors inherent in the statutory scheme that gives rise to violations at the door are a matter for the legislature to address."). Relying on the PRB's discretion under the Illinois parole statute, binding Seventh Circuit and Northern District of Illinois precedent, and the notion that "violating an offender at the door" is a legal fiction implemented as a practical measure; Stepney did not gain a cognizable liberty interest arising out of a technicality, and therefore cannot establish a Fourteenth Amendment procedural due process claim. *See* 730 ILCS 5/3-3-7(a) ("The conditions of . . . mandatory supervised release *shall be such as the Prisoner Review Board deems necessary* to

assist the subject in leading a law-abiding life.”) (emphasis added); *Murdock*, 2014 WL 916992, at *6 (“Once the PRB approved the Plaintiffs for early release, that approval became a form of statutory liberty that could not be revoked without appropriate procedures.”); *Kendrick v. Hamblin*, 606 F. App’x 835, 837 (7th Cir. 2015) (“Parole statutes do not give rise to a protectable liberty interest when they provide that parole is discretionary.”); *Werner v. Wall*, No. 14-1746, 2016 WL 4555610, at *9 (7th Cir. Sept. 1, 2016) (citing *State ex rel. Riesch v. Schwarz*, 692 N.W.2d 219, 225–26 (2005)) (“[T]he DOC has substantial discretionary authority to develop the rules and conditions for release . . . . Where inmates violate these terms immediately and simultaneously with their scheduled mandatory release dates, the DOC should be able to maintain continuous custody, even though that person’s status changes from a prisoner . . . to a parolee.”) (emphasis omitted). However, for purposes of completeness, the Court will address Stepney’s argument that “[b]y failing to properly investigate Plaintiff’s proposed home site or take any steps towards [its] investigation,” Johnson violated his right to procedural due process. Dkt. 67 ¶ 59. Assuming that Stepney had a cognizable liberty interest, he was not deprived of any due process protections.

Due process provides “that ‘a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.’” *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J. concurring)). “Due process ‘is flexible,’” and

necessitates "that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case." *Mathews*, 424 U.S. at 334, 349 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 268–69 (1970)); *Greenholtz*, 442 U.S. at 12–13 (quoting *Morrissey*, 408 U.S. at 481). Minimally, due process demands "*some* kind of notice and . . . *some* kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

The IDOC provided Stepney with notice on November 18, 2011, the day that he was admitted into the IDOC's custody, when it issued Stepney a warrant for failing to have approved housing as part of the "turnaround" procedure. *Mathews*, 424 U.S. at 348; Dkt. 67 ¶ 31, ¶ 58; *see* Parole Violation Report, Dkt. 74-1, Exhibit 5 ("Offender is in violation of the Rule #16 in that he is mandated by the Prisoner Review Board to be supervised on electronic monitoring. This agency attempted to place the offender at (all) places with family and/or friends in the community and no suitable host site was found to supervise the offender on electronic monitoring."). Nor did "violating an inmate at the door" as a general practice deprive Stepney of notice: "sex-offender parolees subject to the turnaround practice are put on notice that IDOC must approve their host site" prior to being released. *Murdock*, 2014 WL 916992, at *12. Inmates are further notified if their site is not approved. *Id.* Thus, "the turnaround practice provides sufficient 'notice' under the due process clause." *Id*.

Moreover, the warrant issued to Stepney provided him with a chance to meet "the case against him," stating that he is "entitled to [a] Preliminary Parole/Mandatory Supervised Release Violation Hearing before a neutral Hearing Officer to determine whether or not probable cause exists," where the condition labeled "[f]ailure to comply with . . . [e]lectronic [m]onitoring" is marked.[3] *Mathews*, 424 U.S. at 348; *see Parole Violation Report*, Dkt. 74-1, Exhibit 5. Stepney initialed the warrant, choosing to "waive [his] preliminary hearing with the understanding that [he] will be afforded a full revocation hearing before the Prisoner Review Board or Parole Board." *Id.* Thus, the IDOC provided Stepney with notice, and the PRB provided him with the opportunity to challenge the warrant and the case against him. *See* Dkt. 67 ¶ 31, ¶¶ 40–44. Stepney, in fact, acknowledges that he took advantage of the available procedures, grieving orally and in writing, and demanding that Defendants enter his proposed address into the OTS. *Id.* at ¶ 39. First, on November 22, 2011, Stepney informally complained to Counselor Kahn about Johnson allegedly not entering his recommended housing sites into the OTS. *Id.* at ¶ 40. Then, Stepney purportedly wrote a five (5) page statement to the PRB on December 5, 2011 "explaining that he

[3] The warrant provides in its entirety: "You are entitled to Preliminary Parole/Mandatory Supervised Release Violation Hearing before a neutral Hearing Officer to determine whether or not probable cause exists that you did commit one or more of the violations checked above. You may appear and speak on your own behalf at this hearing and you may retain an attorney to represent you at the hearing. You may present evidence to rebut the charges and you may make a written request in advance of the hearing to present witnesses who can provide relevant information or to question adverse witnesses. If probable cause on any new criminal charge is determined by the court prior to the hearing date, you are not entitled to a preliminary hearing." *Parole Violation Report*, Dkt. 74-1, Exhibit 5.

gave Johnson his proposed housing sites and she failed to put them in the computer system or assign them to a supervisor." *Id.* at ¶ 41. Later, on January 5, 2012, Stepney claims that he gave another "written statement to the PRB regarding the IDOC's failure to investigate his proposed housing site." *Id.* at ¶ 42. Stepney also "filed an Offender's Grievance, alleging that he provided addresses and phone numbers to Johnson for investigation," which Johnson purportedly failed to enter into the OTS. *Id.* at ¶ 43. Lastly, Stepney had state court remedies. *See Figgs v. Dawson*, No. 15-2926, 2016 WL 3974121, at *8 (7th Cir. July 25, 2016); *Toney-El v. Franzen*, 777 F.2d 1224, 1228 (7th Cir. 1985) (finding that state court remedies which provide an inmate with "the right to seek a writ of mandamus" and a false imprisonment cause of action are "adequate and available remedies"). Stepney, thus, had adequate notice that he was being denied MSR outside of the physical custody of the IDOC and opportunities to contest it. *Mathews*, 424 U.S. at 348. Furthermore, the IDOC does not have the authority to conduct a parole revocation hearing; such authority is vested with the PRB. *See* Ill. Admin. Code tit. 20 § 1610.140. The Complaint alleges that Johnson is and was a counselor at the NRC at Stateville, and that John Doe was Johnson's supervisor. Dkt. 67 ¶¶ 9–10. Thus, Stepney's chief complaints should lie with the PRB, not Defendants. Nonetheless, Stepney was not deprived of a liberty interest without due process, and therefore, Count II is dismissed.

### III. Count III: Fourteenth Amendment Substantive Due Process

Finally, Johnson asks the Court to dismiss Count III of the Complaint because MSR is not a fundamental right. Dkt. 74-1, p. 8. Stepney, in response, first argues that he was unlawfully detained when serving his MSR sentence in the physical custody of the IDOC, appearing to argue that he did have a fundamental right to MSR outside of the IDOC's physical custody. *See* Dkt. 67 ¶¶ 67–68. Stepney also argues that "his sentence date was expired," and he had "a fundamental right in being released upon expiration of his sentence date," seeming to adopt the reasoning that "an inmate's MSR term is separate and distinct from his sentence." *See* Dkt. 76, p. 10. These arguments cannot stand.

Pursuant to the Fourteenth Amendment, "substantive due process, at its essence, protects an individual from the exercise of governmental power without a reasonable justification." *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). The Seventh Circuit "has cautioned, [ ] the scope of substantive due process is very limited." *Id.* The Court dismisses Count III of the Complaint because Stepney did not have a fundamental right to MSR: the case law is clearly contrary to Stepney's contention. *See* Dkt. 67 ¶¶ 67–68; *Toney-El*, 777 F.2d at 1227 (stating that a plaintiff "has no substantive due process right to an early release from prison"). Stepney contends that he "had a substantive right to be free from imprisonment absent lawful justification," and that "[b]y failing to investigate [his] proposed housing site[,] and" by not addressing his "repeated complaints . . . , Defendants acted in reckless and

conscious disregard of and with deliberate indifference to Plaintiff's constitutional right to substantive due process under the Fourteenth Amendment." Dkt. 67 ¶¶ 67–68. Stepney appears to argue that by remaining in the IDOC's physical custody for his MSR, instead of outside of its physical custody and solely in the IDOC's legal custody, Johnson violated Stepney's substantive due process rights. *See id.* at p. 11–12. Such an argument fails, as inmates do not have a right "to be conditionally released before the expiration of a valid sentence." *See Greenholtz*, 442 U.S. at 7.

To the extent that Stepney maintains that "his sentence date was expired," appearing to reason that "an inmate's MSR term is separate and distinct from his sentence," and therefore he had a right to be released on MSR, or "may have had his sentence date recalculated," Stepney's argument also fails. *See* Dkt. 76, p. 10; *People v. Lee*, 2012 IL App (4th) 110403 ¶ 33. For not registering as a sex offender, a Judge sentenced Stepney to two years imprisonment and a one-year MSR term. Dkt. 76, p. 10. Stepney is mistaken in attempting to unwind his sentence in prison from MSR; rather, they are intertwined: "[a] term of MSR is a required component of any sentence that involves incarceration for a felony offense." *People v. Younger*, 2015 IL App (1st) 130540-U, ¶ 15 (citing 730 ILCS 5/5–8–1); *see also People v. Hunter*, 2011 IL App (1st) 093023, ¶ 23 ("[T]he MSR term is not a negotiated release or a privilege but, rather, a mandatory part of defendant's sentence."). His sentence is discharged once he finishes his MSR term. *Id.* MSR has no effect on an inmate's sentence; instead, it "*authoriz[es]* service of the sentence outside the penitentiary." *Kinney*, 195

N.E.2d at 653 (emphasis added); *Murdock*, 2014 WL 916992, at *1 (stating that Illinois *permits* inmates to be released from prison on MSR) (emphasis added). Here, Stepney had the opportunity to serve his MSR outside of the penitentiary, subject to meeting to conditions set by the PRB. His alleged failure to meet the required MSR conditions, leading him to serve MSR in the physical custody of the IDOC, did not deprive him of his substantive due process rights. *See Armato*, 944 F. Supp. 2d at 631 n.3. Count III of the Complaint is therefore dismissed.[4]

Lastly, the Court denies Stepney's request for leave to amend the Complaint. If Stepney seeks to amend the Complaint a fourth time, he should seek leave of the Court to file a Fourth Amended Complaint, properly providing notice.

**CONCLUSION**

For the aforementioned reasons, the Court grants Johnson's motion to dismiss Counts II and III of the Complaint for failure to state a claim under Rule 12(b)(6), and

---

[4] The Court acknowledges but does not address Johnson's arguments that Counts II and III must be dismissed because Stepney had sufficient state law remedies, *see* Dkt. 74-1, p. 13–14, or that Counts I, II, and III of the Complaint must be dismissed on Eleventh Amendment immunity grounds, *see* Dkt. 74-1, p. 14–15; Dkt. 78, p. 11–12. *See Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014)) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)) ("[C]omplaints need not anticipate affirmative defenses; neither *Iqbal* nor *Twombly* suggests otherwise."); *Polo v. Cook Cty.*, No. 15 C 3644, 2016 WL 930657, at *4 (N.D. Ill. Mar. 10, 2016) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)) ("An affirmative defense typically is not an appropriate ground on which to dismiss a complaint under Rule 12(b)(6), 'because complaints do not have to anticipate affirmative defenses to survive a motion to dismiss.'"); *Reno v. Peters*, No. 87 C 10827, 1988 WL 33840, at *5 (N.D. Ill. Apr. 6, 1988) ("Qualified immunity is an affirmative defense that cannot be used to contest the sufficiency of a complaint in a motion to dismiss under Rule 12(b)(6)," and "[a]n individual capacity suit against state officials is not subject to dismissal under the Eleventh Amendment.") (citing *Gomez*, 446 U.S. 635 and *Shockely v. Jones*, 823 F.2d 1068, 1070–72 (7th Cir.1987)).

denies her motion to dismiss Count I. Dkt. 74. Stepney is given leave to file a fourth amended Complaint within two weeks of the date of this Opinion. It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 10/3/2016