IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISVISION

| | | |
|---|---|---|
| LAURENCE STEPNEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 3548 |
| | ) | |
| v. | ) | Honorable Charles P. Kocoras |
| | ) | Judge Presiding |
| CLEO JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, CLEO JOHNSON ("Johnson"), by and through her attorney, LISA MADIGAN, Attorney General of Illinois, and in support of her Motion for Summary judgment, hereby states as follows:

**INTRODUCTION**

Plaintiff fails to demonstrate that there is any genuine issue of material fact as to whether Defendant Johnson violated his Eighth Amendment right and therefore judgment should be entered in the Defendant's favor.

In Plaintiff's initial Complaint and Amended Complaint, he alleged that Johnson, and several Illinois Department of Corrections' (IDOC) employees, violated his constitutional rights when they failed to properly award Plaintiff with credits for time served and caused him to be incarcerated six months beyond his sentence. [See Defendant's Statement of Facts ("SOF"), at ¶¶4-5]. However, after discovery revealed that Plaintiff's sentence was calculated properly, and that he served the amount of time that was required by his original sentence and sentence of parole, known as Mandatory Supervised Release (MSR), Plaintiff has now pivoted towards an entirely different theory. [SOF ¶6]. In his Third Amended Complaint ("Complaint"), alleging violations

under the Eighth (Count I) and Fourteenth Amendments (Counts II and III), [SOF ¶6], Plaintiff claims that Defendant Johnson's failure to enter Plaintiff's demographic information into IDOC's computer system caused Plaintiff to be denied his release on parole and therefore wrongly incarcerated. [SOF ¶6]. On October 23, 2016, this Court dismissed Plaintiff's Fourteenth Amendment claims (Counts II and III), and only Plaintiff's Eighth Amendment claim now remains. [SOF ¶7].

In support of his claim, Plaintiff asserts that he was eligible to be released on parole (MSR) when he was transferred into IDOC custody on November 18, 2011. [SOF ¶12-13]. Plaintiff testified that, when Johnson met with him to complete the process for releasing him from custody, he provided her with two proposed addresses in Chicago for him to reside at during his MSR ("host sites"): 1130 E. 82nd Street (82nd Street Address) and 3861 W. Maypole (Maypole Address). [SOF ¶¶9,31-32,38]. Plaintiff testified that Johnson failed to enter the host sites into IDOC's computer system, Offender Tracking System (OTS), and that the host sites were therefore never investigated and approved by a parole agent, causing Plaintiff to remain in custody until his sentence was discharged. [SOF ¶9,38].

Defendant Johnson is entitled to judgment as a matter of law because there is no evidence that Plaintiff's Eighth Amendment rights were violated. For one, Plaintiff fails to demonstrate that there was an unquestioned and serious deprivation of a constitutional right when he was denied release on MSR. Plaintiff's MSR was revoked as a matter of law because he failed to comply with the condition of his MSR that required him to have a host site capable of electronic monitoring. [SOF ¶23]. Moreover, there is no evidence that, during the six months of his MSR in which he was incarcerated, either the 82nd Street Address or Maypole Address complied with the all of the conditions of his MSR, including those imposed on him as a convicted sex offender. [SOF ¶¶17-

23,51]. Second, Plaintiff puts forth insufficient evidence from which a reasonable jury could conclude that Defendant Johnson's alleged actions were done with the requisite culpable state of mind. Whereas the evidence shows that Plaintiff would have violated his parole regardless of Johnson's conduct, there is no evidence that Johnson's alleged failure to enter the address was anything more than negligence. Nor is there any evidence that after Plaintiff was denied his release and declared a parole violator, Johnson knew that Plaintiff was at risk of being wrongly incarcerated. [SOF ¶¶30-42]. In any event, Defendant Johnson is entitled to qualified immunity.

Accordingly, this Court should enter judgment in favor of Defendant Johnson.

## STANDARDS

### A. Motion For Summary Judgment

Summary judgment is appropriate and shall be rendered when the pleadings, depositions, answers to interrogatories and affidavits, show that no genuine issue of material fact exists and "the movant is entitled to judgment as a matter of law." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); FED. R. CIV. P. 56(c). In opposing summary judgment, the non-movant is required "to present evidence that, if believed by the trier of fact, would support a finding that his constitutional rights were violated." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). Thus, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)).

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts

to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322-23. The opposing party cannot rely on general conclusory allegations, but rather "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 257 (1986). In other words, the non-moving party may not defeat a motion for summary judgment by simply resting on its pleadings. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Rather, Rule 56(c) requires the non-moving party to go beyond its pleadings and demonstrate the existence of a genuine issue for trial by designating specific material facts in its own affidavits, or by depositions, answers to interrogatories and admissions on file. *Celotex*, at 324. In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party. *Squibb*, 497 F.3d at 780.

In order for an issue to be genuinely in dispute, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Thus, a plaintiff must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). Summary judgment is thereby required, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322.

### B. Deliberate Indifference (Eighth Amendment)

To ultimately prevail on his Eighth Amendment claim, the Plaintiff must "prove that the defendants held him beyond the term of his incarceration without penological justification, and

that the prolonged detention was the result of the defendants' 'deliberate indifference.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001).

Claims under the Eighth Amendment have both an objective and subjective component. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right. *See Jamison–Bey v. Thieret,* 867 F.2d 1046, 1048 (7th Cir.1989); *Meriwether v. Faulkner,* 821 F.2d 408, 416 (7th Cir. 1987). The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992); *Wilson,* 501 U.S. at 298. To satisfy the deliberate indifference standard requires more than negligence, or even gross negligence, rather the defendant "must meet 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *McGee v. Adams,* 721 F.3d 474, 480–81 (7th Cir.2013) (quoting *Johnson v. Snyder,* 444 F.3d 579, 585 (7th Cir.2006)).

## ARGUMENT

**I. There Is No Evidence Upon Which A Jury Could Reasonably Conclude Plaintiff's Eighth Amendment Rights Were Violated Due To Johnson's Deliberate Indifference.**

Plaintiff fails to put forth sufficient, competent evidence from which a reasonable jury could conclude that Plaintiff suffered "an unquestioned and serious deprivation of a constitutional right," or that Defendant Johnson's alleged actions involved "criminal negligence."

**A. Plaintiff Was Denied Parole For Legitimate Penological Reasons And There Is No Evidence He Was Entitled To Release On MSR.**

The evidence demonstrates that Plaintiff was denied parole because he failed to comply with the conditions of his MSR. Moreover, there is no evidence that Plaintiff ever provided

Johnson with a valid host site that complied with his MSR, and therefore no reasonable jury could conclude that Plaintiff was wrongly incarcerated beyond his sentence.

### 1. Plaintiff Was Denied Release Because He Failed To Comply With The Conditions of His Mandatory Supervised Release.

On November 15, 2011, Plaintiff was convicted of violating the Illinois Sex Offender Registration Act (730 ILCS 150/10(A)), and sentenced to two years in prison, subject to credit received for the five hundred eighty-one (581) days he actually served in custody, and one year Mandatory Supervised Release (MSR). [SOF ¶11]. Although Plaintiff was eligible for parole immediately upon entering IDOC custody on November 18, 2011, [SOF ¶13], his release was subject to special conditions placed on his MSR that included the requirement that he provide a host site capable of electronic monitoring. [SOF ¶21]. Once Plaintiff arrived at the NRC in IDOC custody, he was "violated at the door" for failing to comply with the electronic monitoring condition of his MSR. [SOF ¶23]. An inmate is "violated at the door" when they are deemed to be in violation of their MSR without having ever physically left IDOC custody, which occurs because the IDOC has not yet had an opportunity to investigate a proposed housing site that complies with every condition of the inmate's MSR. [SOF ¶24]. An inmate who is "violated at the door" cannot be released from the physical custody of IDOC until he either provides a host site that complies with his MSR and state and local laws, and is thus approved by the IDOC, or until his sentence is discharged entirely. [SOF ¶27].

Due to Plaintiff's failure to comply with his MSR, there is no genuine issue of fact that Plaintiff was held to be a parole violator and denied his release, on November 18, 2011, for legitimate penological reasons. Thus, regardless of Johnson's alleged actions, there was no deprivation of Plaintiff's constitutional rights because he was not entitled to be released on MSR. *See Armato*, 766 F.3d at 721 (defendants justified and not deliberately indifferent for denying

plaintiff's release where plaintiff was convicted sex offender and releasing him without MSR contrary to Illinois law); *See also Crayton v. Duncan*, WL 2207191, *3 (C.D.Ill. May 8, 2015) (dismissing deliberate indifference claim where plaintiff was "turned around at the gate and returned to prison" for failing to meet housing requirements as convicted sex offender).

Thus, when Plaintiff was "violated at the door" and denied his release, there was no "unquestioned and serious deprivation of a constitutional right." *See Jamison–Bey,* 867 F.2d at 1048; *Meriwether,* 821 F.2d at 416.

### 2. There Is No Evidence That Plaintiff Proposed A Host Site That Would Have Complied With His MSR.

There is no evidence that Plaintiff ever provided Defendant Johnson, or any other IDOC official, with a proposed host site that would have complied with the conditions of his MSR, and therefore no reasonable jury could conclude Plaintiff was unquestionably denied a constitutional right to be released on parole.

Plaintiff has only testified or claimed to have provided two addresses to Johnson to enter into OTS, the Maypole Address and the 82nd Street Address. [SOF ¶¶33,38]. Plaintiff testified that he had previously been told by the Chicago Police Department that both of these addresses were "valid." [SOF ¶49]. Plaintiff has also claimed that, because he was "released" to the 82nd Street Address on May 18, 2012, it demonstrates that it would have been previously approved by the IDOC parole unit if it were entered into OTS and assigned to them for investigation. [SOF ¶49]. However, Plaintiff fails to put forth any evidence to support his claim that the addresses complied with the conditions of his MSR and would have been approved by the IDOC.

Rather, the evidence shows that, on February 23, 2012, the Maypole Address was investigated by an IDOC parole agent as a possible host site for Plaintiff but was denied. [SOF ¶45]. The parole agent, Timothy Blair, testified that he denied the Maypole Address as a potential

host site for Plaintiff's MSR because he could not verify whether it was suitable for electronic monitoring, and because it was located within five hundred (500) feet of a park and five daycares. [SOF ¶45]. Thus, there is no evidence from which a jury could reasonably conclude Plaintiff was deprived of a constitutional right to be released to the Maypole Address.

Accordingly, the only way in which Plaintiff can prove is claim is to demonstrate that the 82nd Street Address complied with his MSR between November 18, 2011 and May 18, 2012. Yet, the only support Plaintiff offers is that, because he was "released" to the 82nd Street Address on May 18, 2012, it proves the address would have complied with his MSR and been approved as a valid host site prior to that date. [SOF ¶49]. However, Plaintiff was not "released" to the 82nd Street Address, but rather he was "discharged" from his sentence of MSR entirely. [SOF ¶47]. When an offender is discharged from his sentence the IDOC cannot maintain physical custody over them, and therefore the offender need not a host site approved in order to be released. [SOF ¶50]. In other words, because Plaintiff was discharged from his sentence on May 18, 2012, the IDOC never investigated the 82nd Street Address to determine whether it complied with all the conditions of MSR. Thus, one could not reasonably conclude that because Plaintiff chose to reside at the 82nd Street Address after being discharged on May 18, 2012, it thereby proves that it would have complied with his MSR and been approved as a host site.

Moreover, although a failure to comply with the electronic monitoring condition was the reason cited for Plaintiff's parole violation on November 18, 2011, his MSR also contained numerous additional restrictions due to his prior conviction of a Class X Felony for Aggravated Criminal Sexual Assault. [SOF ¶¶10,19,22]. Thus, in order to prove that the 82nd Street Address complied with all conditions of his MSR, Plaintiff must demonstrate that, between November 2011 and May 2012, the site complied with electronic monitoring, including that it had a working

landline, was not located "within 500 feet of any parks, schools, daycare centers," that the local police department would not refuse to register Plaintiff at the address, that the residence did not contain any children, alcohol, weapons, computers or internet, and no other parolee or sex offender resided within the building at the time. [SOF 19-22]. Even then, the determination to approve a convicted sex offender's proposed host site is subjectively made by both a parole agent and his supervisor, meaning there would need to be a concurrence on its compliance. [SOF ¶18].

Not only has Plaintiff failed to put forth any competent evidence to show that the 82nd Street Address complied with all of these conditions during the time of his MSR sentence, but any conclusion that it did comply would be unreasonable speculation. In fact, on November 9, 2016, the 82nd Street Address was investigated by a Senior Parole Agent with IDOC and the Chicago Police Criminal Registration Unit, who both found that the building "is located within five hundred (500) of a child daycare registered with the Illinois Department of Children and Human Services." [SOF ¶51]. The IDOC parole agent concluded that "if a convicted sex offender eligible to be released on MSR proposed the 1130 E. 82nd Street Address as a host site, it would be denied by our office and the offender would not be released from custody until a suitable host was found or his term of MSR was discharged. [SOF ¶51].

Thus, there is no evidence from which a reasonable personal could conclude that Plaintiff provided a valid host site during his term of MSR. Accordingly, as Plaintiff fails to demonstrate that he has suffered a deprivation of a constitutional right, Defendant Johnson is entitled to judgment as a matter of law.

### B. No Reasonable Jury Could Conclude Johnson Acted With A Sufficiently Culpable State Of Mind Or Knew Plaintiff Was At Risk Of Wrongful Incarceration.

A state officer is deliberately indifferent when she does nothing, *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015), or when she takes action that is so ineffectual under the circumstances

that deliberate indifference can be inferred. *Burke*, 452 F.3d at 669 (citing *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)). Even when taking as true Plaintiff's claim Johnson failed to enter his host sites into OTS, there is no evidence from which one could reasonably conclude that Johnson failed to act with a sufficiently culpable state of mind. Nor could it be reasonably concluded from the evidence that Johnson knew that there was serious risk that Plaintiff would continue to be wrongly incarcerated. In other words, Plaintiff fails to demonstrate that there is a triable issue of fact regarding Johnson's state of mind.

1. **There Is Insufficient Evidence To Reasonably Conclude That Johnson Knowingly Failed To Enter The Addresses With A Culpable State of Mind.**

Johnson stated that she was employed as a Field Services Representative on November 18, 2011, [SOF ¶2], but testified that she had no recollection of Plaintiff, or having taken his demographic information on that date. [SOF ¶16]. Johnson also testified that her job was to process inmates who were being released on MSR, and that her duties included having inmates sign release papers and entering their demographic information into OTS. [SOF ¶15]. Plaintiff testified that after he arrived at the NRC on November 18, 2011, Defendant Johnson separated him into the release process and had him fill-out papers with his demographic information. [SOF ¶¶30-31]. Plaintiff further testified that he provided Johnson with the Maypole Address and the 82nd Street Address, which Johnson allegedly wrote down on his Sex Offender Registration Act Notification Form but failed to input into the OTS computer system. [SOF ¶¶31-33,38]. Plaintiff alleges that Johnson's failure to enter into OTS constitutes deliberate indifference because she knew that doing so could cause Plaintiff to be wrongly incarcerated. [SOF ¶9].

Even if these claims were true, however, there is no evidence that Johnson knowingly failed to input the address into OTS. Rather, Johnson's alleged failure to input the host site information for the Plaintiff amounts to, at worst, "garden-variety negligence, which is not actionable under §

1983." *See Shesler v. Sanders*, 2014 WL 5795486, *6 (N.D.WI. Nov. 6, 2014) (granting motion for summary judgment in favor of defendants who failed to recognize that plaintiff had been given an unlawfully long period of extended supervision). In *Shesler*, the Court held that in the absence of evidence showing "defendants 'ignored' their duty…in the sense that they intentionally chose not to" ensure the inmate was properly and legally released, the defendants' were entitled to judgment as a matter of law. *Id*. In this case, Plaintiff testified that Johnson met with him, placed him into the release process, provided him with forms and instructions, and then obtained his demographic information and wrote it down on his release forms. [SOF ¶¶30-33]. Plaintiff's own testimony demonstrates that Johnson was performing her duties in good faith and did not altogether "ignore" her duty to Plaintiff as a Field Services Representative. That the 82nd Street Address Johnson allegedly wrote on Plaintiff's Sex Offender Registration Notification Form did not make its way into a computer system does not reasonably support the conclusion that Johnson's actions were so ineffectual as to be considered "criminal negligence." [SOF ¶¶32-33]. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (noting that a prison doctor demonstrates deliberate indifference by pursuing treatment "so blatantly inappropriate as to evidence intentional mistreatment").

Accordingly, as Plaintiff's claim against Johnson is based entirely on Johnson's alleged failure to enter his host site into a computer system, and there is no evidence that her failure to do so was either intentional or criminally negligent, Johnson is entitled to judgment as a matter of law.

### 2. There Is No Evidence That Johnson Knew That Plaintiff Was At Risk Of Being Wrongly Incarcerated And Failed To Act.

There is no evidence that when Plaintiff was found in violation of his parole on November 18, 2011, Johnson knew that Plaintiff was at risk of being wrongly incarcerated and failed to act.

Plaintiff testified that he had a total of three interactions with Johnson, on November 18, 20, 24, 2011. [SOF ¶41]. Prior to his last interaction with Johnson, on November 24, Plaintiff testified that he met with a Counselor Khan, who had informed him that because of Johnson there was "nothing in my demographic information" in the computer system. [SOF ¶38]. Yet, only two days thereafter, when Johnson met with Plaintiff at his jail cell to obtain a signature for his Parole Violation Report, Plaintiff testified that the only concern he raised with Johnson was that he believed he "was beyond parole" and should have been released. [SOF ¶39]. Thus, only two days after allegedly learning of Johnson's failure to act, Plaintiff did not question Johnson on his demographic information, did not confirm whether Khan had entered anything in OTS, and did not request that his proposed host sites be investigated. In other words, Johnson had no knowledge that Plaintiff was at risk of being wrongly incarcerated due to a lack of demographic information in the system, and Plaintiff had the opportunity to inform her but chose not to. *Perrault v. Wisconsin*, 2015 WL 5032656, *3 (W.D.WI. Aug. 25, 2015) (finding that "[d]eliberate indifference means that the officials were aware of the sentencing problem and the risk of unwarranted punishment but failed to act or took ineffectual action under the circumstances."); (citing *Moore v. Tartler,* 986 F.3d 682, 686 (3rd Cir. 1993).

Nor did Plaintiff file a grievance regarding Johnson's alleged failure to have his addresses entered in OTS and investigated, until February 27, 2012, at which point he was at Western Correctional Center and no longer within Johnson's purview of duty at the NRC. [SOF ¶46]. Thus, there is no evidence that Johnson ever knew that she failed to enter Plaintiff's address, or that she knew Plaintiff continued to have his release denied because no host site was being investigated. *See Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. July 25, 2016) (applying knowledge requirement of deliberate indifference claim where "[defendants] knew of the possibility [plaintiff] was being

held beyond the date he was entitled to be released…"); *compare*, *Campbell v. Peters,* 256 F.3d 695, 700-02 (7th Cir.2001) (suggesting that officers who were aware of plaintiff's complaints about incorrect sentence calculation violated Eighth Amendment).

Accordingly, there is no evidence that Johnson was aware Plaintiff was at risk of being wrongly incarcerated and failed to act, and therefore no reasonable jury could conclude she was deliberate indifferent to a serious risk of harm to Plaintiff.

## II.     Qualified Immunity

Under § 1983, a defendant is entitled to qualified immunity from money damages for his discretionary actions if his conduct does not violate any clearly-established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). For example, in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (See Fed. R. Civ. P 12(b)(6), (c)) or shown (See Fed. R. Civ. P. 56, 60) make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing Saucier, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 816. A clearly established right is one that "is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) The test is purely legal, without regard to the subjective motivations of the defendant. Id. at 818-19; *Mitchell v. Forsyth*, 472 U.S. 511(1985); *Davis v. Scherer*, 468 U.S. 183, 191 (1984).

For one, in light of the legal precedent identified in the preceding sections, Plaintiff's alleged facts do not make out a violation of a constitutional right. Specifically, Plaintiff's allegations do not demonstrate that he had a constitutional right to be released without first complying with the conditions of his MSR. Second, there was no clearly established constitutional right "at the time of [Defendant Johnson's] alleged misconduct." *Pearson*, at 816. At the time of Johnson's alleged misconduct, when she met with Plaintiff on November 18, 2011, Plaintiff had already been held in violation of his parole and was being incarcerated for legitimate penological purposes; for failure to comply with the conditions of MSR. When Johnson allegedly failed to input Plaintiff's proposed host sites, it was not sufficiently clear to a reasonable person in Johnsons' position that such an oversight would violate a constitutional right. Thus, there is no clearly established right or closely-analogous case to put the Defendant on notice that her actions violated the law. *See Anderson*, 483 U.S. at 640 (qualified immunity applies unless the official's conduct violated a clearly established right, apparent from the pre-existing law).

Accordingly, Defendant Johnson is entitled to qualified immunity from Plaintiff's claim.

## CONCLUSION

Plaintiff fails to demonstrate that there is a triable issue of fact as to whether he was properly held to be in violation of his parole, or that he had a constitutional right to release from custody because he provided a host site that complied with the conditions of his MSR. Plaintiff also fails to demonstrate that there is a triable issue of fact as to whether Defendant Johnson acted with a culpable state of mind by failing to enter his proposed addresses, or that she knowingly disregarded a serious risk of Plaintiff being wrongfully incarcerated.

**WHEREFORE,** based on the foregoing arguments, Defendant Cleo Johnson moves this Honorable Court to enter summary judgment in her favor, and against the Plaintiff, and for such further relief as the Court finds reasonable and just.

LISA MADIGAN
Attorney General of Illinois

Respectfully Submitted,

/s/ *Patrick D. Morris*
PATRICK D. MORRIS
Assistant Attorney General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
(312) 814-6594