**IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISVISION**

| | | |
|---|---|---|
| LAURENCE STEPNEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 3548 |
| | ) | |
| v. | ) | Honorable Charles P. Kocoras |
| | ) | Judge Presiding |
| CLEO JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNCONTESTED FACTS**

NOW COMES Defendant CLEO JOHNSON ("Johnson"), by and through her attorney,

LISA MADIGAN, Attorney General of Illinois, pursuant to L.R. 56.1 and in support of her Motion

for Summary Judgment, hereby states the following uncontested facts:

**LIST OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Third Amended Complaint ("Complaint") by Plaintiff Lawrence Stepney ("Stepney") |
| Exhibit B | Deposition transcript of Plaintiff Stepney |
| Exhibit C | Deposition transcript of Defendant Johnson |
| Exhibit D | Deposition transcript of Timothy Blair, Senior Parole Agent, Illinois Department of Corrections |
| Exhibit E | Declaration of Joseph Blaha, Senior Parole Agent, Illinois Department of Corrections |
| Exhibit F | Chicago Police Department "Criminal History Report," of offender Lawrence Stepney |
| Exhibit G | Deposition Transcript of Shelia Bell, former Records Office Supervisor with the Illinois Department of Corrections, at Western Correctional Center |

## PARTIES

1.      Plaintiff, Lawrence Stepney, was at all times relevant to this lawsuit a prisoner of the State of Illinois, in the custody of the Illinois Department of Corrections ("IDOC"), identification number B-05228. [Ex. A, pg. 2].

2.      Defendant, Cleo Johnson, is employed with the Illinois Department of Corrections as a Correctional Counselor at Stateville Correctional Center, and, from October 17, 2011 to June 30, 2012, was assigned to the Northern Reception and Classification Center ("NRC") as a Field Services Representative. [Ex. C, 7:17-8:7].

## JURISDICTION AND VENUE

3.      The parties do not contest jurisdiction, which is appropriate in this Court pursuant to 28 § U.S.C. 1331, 1343 and 1367, nor do they contest venue which is proper in this matter pursuant to 28 U.S.C. § 1391(b)(2). [Ex. A, pg. 2].

## PROCEDURAL HISTORY

4.      Plaintiff initially filed his complaint *pro se*, on May 15, 2014, alleging Defendant Johnson violated his constitutional rights by failing to properly calculate his credits for days served in custody, causing him not to be released from physical custody on November 18, 2011, and to be incarcerated beyond his sentence. [Ex. B, at Exhibit 2, pgs. 2-4].

5.      Plaintiff obtained legal counsel who, on May 28, 2015, filed a six-count Amended Complaint against Defendant Johnson, and IDOC employees Sheila Bell, Assistant Warden Brown, counselor McNeiff and John Doe, alleging that the Defendants miscalculated Plaintiff's sentence and unlawfully held him beyond his discharge date. [Plaintiff's Amended Complaint, ECF/Doc. 24].

6.      In his Third Amended Complaint, Plaintiff alleges that Defendant Johnson and her supervisor, Jane Doe, violated his constitutional rights under the Eighth (Count I) and Fourteenth Amendments (Counts II and III), by failing to enter into the IDOC computer system and have investigated the Plaintiff's proposed housing sites at which he could serve out his MSR, thereby causing him to be incarcerated for approximately six months longer than necessary. [Plaintiff's Third Amended Complaint, ECF/Doc. 67, attached hereto as Exhibit A].

7.      On October 23, 2016, this Court dismissed Counts II and III of Plaintiff's Third Amended Complaint, but permitted Plaintiff to proceed with his Count I claim against Defendant Johnson for violation of his Eighth Amendment rights. [Judge Kocoras' Memorandum Opinion and Order, ECF/Doc. 79, pgs. 23-24].

8.      In Count I of Plaintiff's Third Amended Complaint ("Complaint"), Plaintiff claims that Defendant acted with deliberate indifference, in violation of the Eighth Amendment, by "refusing to enter Plaintiff's proposed housing site into the computer system, failing to assign it to

2

a supervisor or agent, failing to investigate the housing site and by failing to adequately investigate and respond to Plaintiff's repeated complaints and grievances." [Exh. A, pg. 8, ¶ 56].

9.      In support of Count I, Plaintiff alleges that, on November 18, 2011, Defendant Johnson prepared his documents for release, at which time he provided Johnson with two proposed housing sites in Chicago for him to reside at while serving out his MSR, 1130 E. 82nd Street ("82nd Street Address") and 3861 W. Maypole ("Maypole Address"), but that Johnson subsequently failed to enter the addresses into the IDOC's computer system so that it could be investigated by a parole agent, thereby causing Plaintiff to be wrongly incarcerated until his release on May 18, 2012, approximately six months. [Ex. A, ¶¶ 24-33, citing Exhibit A].

## FACTS

10.      On May 24, 1996, Plaintiff was convicted and sentenced to prison for the Class X Felony crime of Aggravated Criminal Sexual Assault, pursuant to 720 ILCS 5/12-14(A)(4) (now 720 ILCS 5/11-1.30). [Chicago Police Department "Criminal History Report" of Lawrence Stepney, attached hereto as Exhibit F, at pg. 5]; [Ex. D, at Exhibit B, pg. 1].

11.      On November 15, 2011, Plaintiff was convicted of violating the Illinois Sex Offender Registration Act (730 ILCS 150/10(A)), and sentenced to two years in prison, subject to credit received for the five hundred eighty-one (581) days he actually served in custody, and one year Mandatory Supervised Release (MSR). [Ex. B, 41:10-17, citing Exhibit 3]; [Ex. G, 24:13-24, citing Exhibit C].

12.      On November 18, 2011, Plaintiff was transferred from the Cook County Department of Corrections into the custody of the IDOC and sent to its NRC facility. [Ex. B, 12:1-4]; [Ex. G, 22:9-11].

13.      At the time of his transfer to the NRC, Plaintiff had served approximately five hundred and eighty one (581) days of his sentence, and was therefore eligible to be released on MSR immediately upon entry into IDOC custody on November 18, 2011. [Ex. B, at Exhibit 4]; [Ex. G, 24:13-24, citing Exhibit B].

14.      Plaintiff's sentence, movement and eligibility for release upon being placed in IDOC custody were confirmed by Shelia Bell, a twenty-six (26) yearlong employee with IDOC, who worked as the Record Office Supervisor when Plaintiff was incarcerated at the facility she worked at, Western Correctional Center, from January 1, 2012 to May 31, 2012. [See Deposition Transcript of Shelia Bell, attached hereto as Exhibit G, at 9:5-10:4, 31:14-33:24].

15.      On November 18, 2011, Defendant Johnson, in her capacity as a Field Services Representative, was responsible for processing out inmates on MSR, which involved ensuring that the inmates received a release packet containing forms for them to sign. She testified that her duties included entering the inmates' demographic information into IDOC's Offender Tracking System ("OTS") computer program, including any address that the inmates proposed to be released to on MSR (their "host site"). [Ex. C, 34:21-35:8, 43:10-19, 46:20-47:22, 91:6-20, citing Exhibit 4].

16.     Defendant Johnson testified that she did not recognize Plaintiff and had no recollection of meeting with him or of having received a proposed host site from him on November 18, 2011 and assigning it to a supervisor. [Ex. C, 19:4-20:2, 77:24-78:11, 80:12-19].

17.     The process for releasing inmates by a Field Services Representative is different when there are special conditions placed on their MSR, such as for inmates convicted of a sex offense. When a Field Services Representative receives the proposed host site from "[a] regular parolee," they contact the host to verify whether the inmate may stay at the location but the "host site does not have to be checked." With "a sex offender parolee, his site has to be checked to make sure it's in compliance." [Ex. G, 80:10-16]; [Ex. C, 92:17-93:14]. Defendant Johnson testified that she was not involved in the process for approving an offender's proposed host site. [Ex. C, 51:3-6].

18.     For an inmate with special conditions on his MSR, such as a convicted sex offender, the proposed host site that is entered into OTS is assigned to a parole agent, who investigates whether the host site complies with the conditions of his MSR and any applicable laws, and then makes a recommendation to his supervisor for final approval. [Ex. C, 50:5-51:2]. [Ex. D, 13:2-12, 24:4-26:12]; [Ex. E, ¶¶1-2].

19.     The parole agent's investigation into an inmate's housing for MSR is more restrictive for inmates convicted of a sex offense, as the investigation entails: "checking the principle address to make sure it's not within 500 feet of any parks, schools, daycare centers," an "attempt to call the local police department…to verify if they would register the offender at the location[,]" and for the agent "to make contact with the host either by phone or in-person and attempt to make a face-to-face contact with the host to verify if they have a land line phone, that there's no children living in the home, verifying that there's no computers or internet in the home." [Ex. D, 24:8-25:15]; [Ex. C, 49:5-2].

20.     A host site for an inmate convicted of a sex crime against could also be denied because "there cannot be alcohol in the home" and "state law does not allow more than one registered sex offender to live in an address or building or complex if one of them is on parole." [Ex. D, 11:3-12:1]. Nor could an inmate reside at a host site containing weapons. [Ex. G, 79:3-9].

21.     One of the conditions of Plaintiff's MSR was that he had to be released to a host site that was suitable for supervising him through electronic monitoring. [Ex. G, 78:9-79:2; 83:1-11, citing Exhibit G]; [Ex. D, 18:23-19:7, citing Exhibit A].

22.     Plaintiff is a convicted sex offender, [Ex. F, pg. 5], and therefore to be released from custody on MSR his proposed host site "would have to meet all the requirements" to be approved, including that it not contain minors, other parolees in the building, alcohol, or internet, not be located within five hundred (500) feet of park, school, daycare center, etc., and having a working landline to use for electronic monitoring. [SOF ¶¶19-20]; [Ex. D, 26:13-27:4, Exhibit B]; [Ex. F, pg. 5]; [Ex. G, 79:3-11, Exhibit G].

23.     When Plaintiff was transferred to IDOC custody on November 18, 2011, there was no host site that had been approved by a parole agent, and Plaintiff was held to be in violation of

his MSR because "no suitable host site was found to supervise the offender on electronic monitoring." [Ex. B, 105:23-17, citing Exhibit 5]; [Ex. D, 18:23-19:7, citing Exhibit A].

24.     Like Plaintiff, inmates eligible for release immediately upon being transferred into IDOC custody may be "violated at the door" and subject to IDOC's "turnaround policy," whereby they are deemed to be in violation of their MSR without having ever physically left IDOC custody, which occurs when the IDOC has not yet had an opportunity to investigate a proposed housing site to confirm that it complies with the conditions of the inmate's MSR, along with any applicable state and local laws. [Ex. B, 134-136:10]; [Ex. C, 67:12-69:20]; [Ex. D, 14:20-16:20, 18:23-19:7, 21:11-21, 40:13-41:1; citing Exhibit A]; [Ex. G, 38:4-39:20].

25.     Johnson testified that an inmate will be violated at the door even if a proposed host site is entered into OTS on the same day the inmate enters IDOC custody, because the host site had not yet been investigated and approved by a parole agent. [Ex. C, 74:5-75:19].

26.     Once a proposed host site is entered into OTS, it typically takes "a few days" to be assigned to a parole agent who "try to investigate them within ten days of them being assigned," though "it depends on the agent" and the investigation could "take weeks" to complete. [Ex. D, 23:18-24:3; 25:10-15]. Defendant Johnson testified that the process of investigating and approving or denying a proposed host site takes at least fourteen days. [Ex. C, 67:15-18].

27.     An inmate who is "violated at the door" cannot be released from the physical custody of IDOC until he either provides a host site that complies with his MSR and state and local laws, and is approved by the IDOC, or until his sentence is discharged entirely. [Ex. C, 53:18-54:3]; [Ex. D, 21:11-20]; [Ex. G, 82:19-24].

28.     Johnson testified that, as a Field Services Representative, she did not meet with inmates who were violated at the door because a Lieutenant is summoned to take the inmate to an assigned cell. [Ex. C, 74:2-8; 91:17-92:4]. Johnson testified that at this point the inmate can immediately provide a proposed host site to the Lieutenant violating him at the door. [Ex. C, 71:8-19, 72:7-10, 74:5-8].

29.     Johnson testified that when an inmate is violated at the door, she would meet with them after they have a host site approved, at which point she processes them out and provides them with a new parole packet to sign. [Ex. C, 93:22-94:6].

30.     Plaintiff testified that when he arrived at the NRC on November 18, 2011, Defendant Johnson separated him and placed him into the process for being released from IDOC custody. [Ex. B, 12:1-13:11, 24:13-26:12].

31.     Plaintiff alleges that while in the process of being released he provided Defendant Johnson with his demographic information, including "the address where I was going to reside" upon release from IDOC custody, which he stated was "1130 East 82nd Street, Apartment 1." [Ex. B, 148:24-150:5].

32. Defendant Johnson acknowledged that Plaintiff's name was listed on "parole packet release documents" that were dated November 18, 2011, which are documents provided to offenders to sign prior to their release on parole. [Ex. C, 59:5-60:21, citing Exhibit 4]; [Ex. D, 28:16-29:6, citing Exhibit B]. Johnson testified that her signature is affixed to the bottom of several of the "parole packet release documents," including the "Project Safe Neighborhood Notification Letter "Parole or Mandatory Supervised Release Agreement," "Reporting Instructions," and the Illinois Sex Offender Registration Act Notification Form." [Ex. C, 62:6-63:23, citing Exhibit 4, pgs. 2, 7-10].

33. On the "Parole or Mandatory Supervised Release Agreement" in Plaintiff's parole packet release forms, the address listed for Plaintiff is "1130 E. 82nd, Chgo (sic), IL 60620," but the box containing "Apartment #" is blank and there is apartment number listed on the form. [Ex. C, at Exhibit 4, pg. 9]; [Ex. D, at Exhibit B, pg. 1].

34. Plaintiff testified that approximately one hour after arriving at the NRC and beginning the inmate discharge process, Defendant Johnson informed him that he was not being released from IDOC custody. [Ex. B, 13:12-22]. Plaintiff testified that Johnson told him he "wasn't being released because Springfield said don't release this individual." [Ex. B, 14:8-19, 139:20-24].

35. Plaintiff testified that after being denied his release he told Johnson that he had served five hundred eighty one (581) days in custody on his sentence "to max it out," and that he should have been released. [Ex. B, 14:20-15:11].

36. Plaintiff testified that he believes that the IDOC failed to release him because they did not accurately calculate his jail credits and that he was "beyond parole." [Ex. B, 21:10-23, 17:17-21, 103:13-24, 109:9-21].

37. Plaintiff testified that in his second interaction with Johnson at his cell, on November 20, 2011, she asked him to sign a Parole Violation Report but he refused because it was dated November 18, 2011. [Ex. B, 16:19-17-2, 105:15-106:22]. Plaintiff testified that at this time he again told Johnson that he "was beyond my maximum discharge date by 33 days," but nothing else was discussed. [Ex. B, 21:10-22:3, Exhibit 5].

38. Plaintiff alleges that, on November 22, 2011, he met with a Counselor Khan at the NRC. [Ex. A, ¶ 34]. Plaintiff testified that when he met with Counselor Khan at the NRC, Khan informed him that there was "nothing in my demographic information, so she had to take it all over again," and that Johnson was responsible for his 82nd Street Address and Maypole Address not being in the computer system. [Ex. B, 139:1-10]. In letter to the ARB, dated January 5, 2012, Plaintiff wrote that he provided Johnson with the Maypole Address and 82nd Street Address but "neither demographic was entered into the system by Cleo Johnson." [Ex. B, Exhibit 7, pgs.3-5].

39. Plaintiff testified that in his third conversation with Defendant Johnson, on November 24, 2011, she again attempted to have him sign the Parole Violation Report but he refused to do so because he believed he "was beyond parole." [Ex. B, 22:4-24].

40.     When Plaintiff signed the Parole Violation Report and dated it November 26, 2011, he chose to waive his right to a preliminary hearing so that he would be afforded a full revocation hearing before the Prisoner's Review Board (PRB). [Ex. B; 106:13-107:8, citing Exhibit 5].

41.     Plaintiff testified that he did not have any interactions with Defendant Johnson aside from his conversations with her on November 18, 20 and 24, in 2011. [Ex. B, 23:1-5].

42.     Plaintiff met with the PRB on January 5, 2012, after which the PRB issued an order to continue the hearing at Plaintiff's request and to obtain additional information. They further determined that Plaintiff had to have a host site verified by field services and for Plaintiff's calculation of time on his sentence to be verified. [Ex. B, 110:8-111:4, citing Exhibit 6, pg. 1]; [Ex. G, 50:10-51:11, citing Exhibit E].

43.     On February 13, 2012, a parole agent with the IDOC attempted to investigate a proposed host site for Plaintiff and determined "placement denied, address does not exist, no number to contact host." [Ex. D, 31:7-33:19, citing Exhibit C].

44.     Plaintiff's met with the PRB on or around February 22, 2012, after which the PRB issued an order finding that Plaintiff declared himself a parole violator for failure to have an approved host site. [Ex. B, 112:1-14]; [Ex. G, 48:3-21, citing Exhibit D].

45.     Timothy Blair, an IDOC Parole Agent Supervisor, testified that, on February 23, 2012, he investigated and denied the Maypole Address as a potential host site for Plaintiff because he could not verify whether it had a functioning landline to accommodate electronic monitoring, and because it would violate Plaintiff's MSR because the address was within five hundred (500) feet of Garfield Park and five registered daycare centers. [Ex. D, 8-10:12, 20:17-21:10, 35:1-7, citing Exhibit C].

46.     Plaintiff testified that he filed five grievances in which he complained about being wrongly incarcerated; the first one was dated and filed on February 27, 2012, and all were filed when Plaintiff was incarcerated at Western Correctional Center. [Ex. B, 118:17-125:9]; [Ex. A, ¶¶ 39-44].

47.     On May 18, 2012, Plaintiff was discharged after serving his entire MSR in IDOC custody. [Ex. B, 23:19-21; Exhibit 4, at IDOC 000002]; [Ex. G, 41:23-42:1].

48.     Plaintiff testified that upon release from IDOC custody in May of 2012, he went to live at the residence at the 82nd Street Address (1130 East 82nd Street, Apartment 1). [Ex. B, 150:2-11].

49.     Plaintiff testified that the 82nd Street Address and Maypole Address would have been approved by an IDOC agent as a valid host site because he had previously "called the Chicago Police Department registration unit. I gave them two addresses, one for the one I would use and if there's ever a fire or anything as a backup to have them both verified as registerable addresses. They told me both addresses were valid." Plaintiff claims that because he was released to the 82nd

Street Address on May 18, 2012, it demonstrates it would have been previously approved for his MSR. [Ex. B, 150:2-22]; [Ex. A, ¶¶ 36, 38].

50.      When an offender is discharged from his sentence the IDOC cannot maintain physical custody over them, and therefore the offender need have a proposed host site approved in order to be released. [Ex. C, 53:18-54:7, 97:17-99:21]; [Ex. G, 81:1-7, 87:10-15].

51.      On November 9, 2016, the 82nd Street Address was investigated by a Senior Parole Agent with IDOC, Joseph Blaha, who determined that the address "is located within five hundred (500) of a child daycare registered with the Illinois Department of Children and Human Services and therefore no sex offender with a victim under the age of 18 would be permitted to reside there." Mr. Blaha concluded that "if a convicted sex offender eligible to be released on MSR proposed the 1130 E. 82nd Street Address as a host site, it would be denied by our office and the offender would not be released from custody until a suitable host was found or his term of MSR was discharged. [Ex. E, pg. 1].

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

s/*Patrick D. Morris*
PATRICK D. MORRIS
Assistant Attorney General
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois  60601
(312) 814-6594