UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURENCE STEPNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 3548 |
| | ) | |
| CLEO JOHNSON and JOHN DOE | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Cleo Johnson's ("Johnson") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1 against Plaintiff Laurence Stepney ("Stepney"). For the following reasons, the Court grants the motion.

## BACKGROUND

The following facts taken from the record are undisputed except where otherwise noted. Stepney, who, as of May 24, 1996, is a convicted sex offender, must register as such annually. And, should his address or contact information change, Stepney is required to inform a reporting agency. On April 13, 2010, police arrested Stepney because he did not register his new residence. Thereafter, on November 15, 2011, Stepney was convicted of violating the Illinois Sex Offender Registration Act.

A judge sentenced Stepney to two years in prison, subject to time served, and a mandatory supervised release ("MSR") term of one year. The Cook County Department of Corrections had custody over Stepney from April 4, 2010 to November 18, 2011. On November 18, 2011, Cook County transferred Stepney to the Northern Reception and Classification Center (the "NRC") at Stateville Correctional Center ("Stateville") of the Illinois Department of Corrections (the "IDOC"). Upon transfer, Stepney was eligible for release on MSR, but the IDOC violated him at the door.

A convicted sex offender that is eligible for immediate release on MSR may be "violated at the door" and subject to the IDOC's "turnaround policy." As a result of this policy, the IDOC issues an inmate a citation for being in violation of his MSR, although he has not physically left the IDOC's custody. This occurs because the IDOC has not yet had the opportunity to investigate an inmate's proposed housing site to determine whether it complies with MSR conditions and with applicable state and local laws. The "turnaround policy" provides the IDOC with time to investigate the inmate's proposed housing site and to approve or deny it.

An inmate who is "violated at the door" will not be released from the IDOC's physical custody until he secures a host site that complies with his MSR conditions and with state and local laws, and the IDOC approves it, or until his sentence is discharged. A suitable housing location is one that, among other conditions, has a landline telephone, which is necessary for electronic monitoring; is not within 500 feet of any parks, schools, or daycare centers; one at which the local police

2

department will agree to register the offender; does not have computers or an internet connection; does not contain alcohol or weapons; does not house minors; and does not house another registered sex offender at the same address, building, or complex.

Johnson worked at the NRC as a Field Services Representative from October 17, 2011 to June 30, 2012. In this role, Johnson prepared release packets for inmates. She then delivered the packets to inmates who are about to be released, securing their signatures on them. Her duties also included entering inmates' demographic information, including addresses that inmates proposed as suitable to be released on MSR, into a computer program—the IDOC's Offender Tracking System (the "OTS").

When he arrived at the NRC, Stepney claims that Johnson began processing him out to be released from the IDOC's custody. Indeed, Stepney's name was listed on release documents dated November 18, 2011. However, Stepney testified that about one hour after Johnson began the discharge process, she told him that the IDOC was not releasing him from its physical custody, stating, "'Springfield said don't release this individual.'"

On November 18, 2011, Stepney also allegedly provided Johnson with his demographic information, including two proposed housing sites for investigation: 3861 West Maypole ("Maypole") and 1130 East 82nd Street ("82nd"). Thereafter, on November 22, 2011, a counselor by the first or last name of Kahn ("Counselor Kahn") purportedly notified Stepney that he did not have any addresses awaiting investigation

3

in the OTS. Stepney states that he then gave Counselor Kahn the same addresses that he supposedly provided to Johnson four days earlier.

To investigate and approve or deny suggested housing sites, a Field Services Representative enters the addresses into the OTS. Then, "[i]t typically takes 'a few days'" for a supervisor to assign the recommended housing sites from the OTS to a parole agent for investigation. The agent inspects whether the locations comply with MSR conditions and with applicable law by researching online and by personally visiting them. Johnson testified that "it takes at least 14 days for an agent to go out and check a place," but she also stated that, "[o]nce it's assigned to" an agent, "he has 14 days to approve or deny it." Finally, the agent "makes a recommendation to his supervisor for final approval."

Stepney claims that on February 13, 2012, the IDOC investigated one of his proposed housing sites for the first time. It is unknown whether the IDOC investigated Maypole or 82nd at this time because the report does not specify an address. However, the IDOC denied the placement, noting, "address does not exist, no number to contact host.'" But it is certain that the IDOC investigated Maypole on February 23, 2012, and deemed it unsuitable for release on MSR. Timothy Blair, IDOC Parole Agent Supervisor, testified that Maypole "was within 500 feet of Garfield Park and five registered daycare centers." After February 23, 2012, the IDOC did not investigate any other housing sites. Stepney remained in the IDOC's

4

physical custody until May 18, 2012, when his sentence was discharged because he served his entire MSR. He then went to live at 82nd.

In this lawsuit, Stepney initially claimed that the IDOC held him for longer than it was permitted, believing that he had served his entire sentence, and therefore, he was entitled to be *discharged* from the IDOC's custody upon his arrival on November 18, 2011. Once it became clear that his sentence was calculated correctly, Stepney contended that, nonetheless, he should have been *released* from the IDOC's physical custody shortly after he was admitted on November 18, 2011, but he was not because of Johnson's failure to enter his proposed host sites into the OTS.

On October 23, 2016, this Court dismissed Counts II and III of Stepney's Third Amended Complaint. Stepney's Eighth Amendment claim, Count I, is the sole surviving one. In this Count, Stepney alleges that Johnson "acted with deliberate indifference" by failing to: enter his "proposed housing site into the" OTS; "assign it to a supervisor or agent;" examine it; and "adequately investigate and respond to [Stepney's] repeated complaints and grievances." Johnson now moves for, and this Court grants, summary judgment on Count I.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and" she "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury

5

could find, based on the evidence of record, in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court considers the whole record, and it construes all facts and draws all reasonable inferences in favor of the non-movant. *See id.* at 255–56.

"The movant bears the initial burden of showing that no genuine issue of material fact exists." *Genova v. Kellogg*, 12 C 3105, 2015 WL 3930351, at *3 (N.D. Ill. June 25, 2015). "The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id.* Local Rule 56.1 requires the "party moving for summary judgment to include with that motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. R. 56.1(a)(3)). The non-moving party must respond to the movant's Local Rule 56.1 statement and may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits. N.D. Ill. R. 56.1(b); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). He must support his contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Id.*

## II.   Eighth Amendment Claim

"[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* that narrow class of

deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To prevail on his Eighth Amendment claim, Stepney must "prove that the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was the result of the defendants' 'deliberate indifference.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Deliberate indifference "l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "To establish deliberate indifference, [defendants] must meet 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (quoting *Johnson v. Snyder,* 444 F.3d 579, 585 (7th Cir. 2006)); *see Armato*, 766 F.3d at 721; *Bd. v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

## DISCUSSION

The record evidence would not lead a reasonable fact finder to conclude that Johnson held Stepney beyond his incarceration term without penological justification and that the prolonged detention was the result of her deliberate indifference. "The mere existence of a scintilla of evidence in support of" Stepney's position is "insufficient; there must be evidence on which the jury could reasonably find for" him. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Anderson*, 477

7

U.S. at 252); *see Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007). Attempting to survive summary judgment, Stepney contends that three material fact issues remain. First, Stepney claims that whether Johnson entered his host site into the OTS during the relevant time frame is a material fact dispute. Second, Stepney argues that whether his proposed host site, 82nd, was investigated while he served his MSR term in the IDOC's physical custody is a material fact issue. Third, Stepney asserts that whether 82nd would have complied with his MSR conditions during the relevant time period is disputed and material. We analyze these claims below and find that these facts are not material, and Johnson is entitled to judgment as a matter of law because there is no evidence of deliberate indifference.

## I.     Whether Stepney's Host Site was Entered into the OTS and Investigated

First, Stepney argues that whether Johnson entered 82nd into the OTS and whether it was investigated are material fact issues precluding summary judgment. We disagree. The record evidence indicates that Maypole was investigated on February 23, 2012. For it to have been investigated, it must have been entered into the OTS. The IDOC determined that Maypole was not a suitable host site because it was located "within 500 feet of Garfield Park and five registered daycare centers." Thus, Stepney was not entitled to be released to Maypole.

Whether 82nd was investigated between November 18, 2011, when Stepney entered the IDOC's custody, and May 18, 2012, his sentence discharge date, is unclear from the record. Prior to the investigation of Maypole on February 23, 2012,

8

a proposed host site was examined and denied on February 13, 2012. However, the IDOC was sloppy in its bookkeeping, failing to list the proposed host site's address.

Stepney argues that, had Johnson entered 82nd into the OTS as a proposed host site, there would be an electronic record so indicating, taking issue with Johnson's failure to provide such clear-cut evidence. Johnson argues that the record does not even demonstrate that Stepney ever provided her with the complete and correct address for 82nd to enter into the OTS. Stepney testified that he told Johnson that 82nd was "1130 E. 82nd Street, Apt 1." The Illinois Sex Offender Registration Form lists "1130 E. 82nd, Chgo [sic], IL 60620," omitting the unit number. These clashes prove to be irrelevant.

Common sense dictates that the IDOC did not investigate the same address, Maypole, conclude that it does not exist on February 13, 2011, and deny it for that reason, only to subsequently reexamine and locate its existence near Garfield Park ten days later, on February 23, 2011, to deny it for another reason. However, construing the facts in the light most favorable to Stepney, if we assume that he provided Johnson with the complete address for 82nd, that she failed to enter it into the OTS, and that because of her omission, the IDOC never investigated 82nd, she is still entitled to summary judgment for two reasons. First, there is no evidence that the IDOC would have approved 82nd as an MSR compliant host site during the relevant time period, and that therefore, Stepney was entitled to be released to it. And, even if the IDOC would have approved 82nd, there is no evidence of deliberate indifference.

9

## II. Whether 82nd would have met the MSR Conditions

Neither party disputes that, as a prerequisite to Stepney's release from the IDOC's physical custody between November 18, 2011 and May 18, 2012, his host site would have to meet certain criteria. For example, the host site may not "be located within 500 feet of any parks, schools[,] or daycare centers;" "could not contain children, alcohol, weapons, computers[,] or" an internet connection; its other inhabitants, if any, may not be convicted sex offenders or other parolees; the local police department must register Stepney at the address; and it must have a working landline for electronic monitoring. Even if all of the MSR conditions are met, Johnson claims that "the determination to approve a convicted sex offender's proposed host site is subjectively made by both a parole agent and his supervisor."

Stepney argues that "he should have been released one to fourteen days" after he was violated at the door on November 18, 2011, upon approval of his host site. This conclusion requires the finding that Maypole or 82nd complied with all the MSR terms during the relevant time period. It is clear that Maypole did not comply, and that Stepney did not have a right to be released to it. Whether 82nd would have complied with the MSR conditions between November 18, 2011 and May 18, 2012 is disputed, and Stepney has failed to set forth evidence that it was compliant.

Here, Stepney contends that he "called the Chicago Police Department registration unit and confirmed that" 82nd "could be registered as his address upon his release." However, the requirements for release from the IDOC's physical custody

10

extend beyond registering the host site with the local police department. And Stepney does not demonstrate how meeting one MSR prerequisite necessarily meets them all. Stepney also claims that he registered 82nd after his discharge from the IDOC on May 18, 2012. But Stepney's actual registration of 82nd does not encompass the relevant time frame—while Stepney was serving his MSR in the IDOC's custody.

Nor does Stepney's argument that he was ultimately "released" to 82nd on May 18, 2012 indicate that it was an approvable host site. Stepney was not *released* to 82nd; rather, on that date, he was *discharged* from the IDOC's custody. Once an inmate is discharged, the IDOC no longer has the right to investigate and approve or deny his housing site. It does not follow that, because Stepney completed his sentence and chose to reside at 82nd thereafter, 82nd would have been accepted by the IDOC as a suitable location when it still had control over Stepney's whereabouts.

Johnson also argues that 82nd would not have complied with the MSR terms necessary to Stepney's release. The basis for that argument is the testimony of an IDOC Senior Parole Agent and representative from the Chicago Police Criminal Registration Unit, Joseph Blaha. Blaha investigated 82nd on November 9, 2016, and because 82nd "is located within five hundred (500) [feet] of a child daycare," it would be denied as a host site. Because this determination was outside of the relevant time frame, it cannot be considered in Johnson's defense.

Nonetheless, there is no evidence that Stepney would have been released to 82nd during his MSR term, and thus, a reasonable jury would not conclude that

11

Stepney "was unquestionably denied a constitutional right to be released on parole." Importantly, the fact disputes discussed in Parts I and II do not preclude summary judgment because Stepney does not present evidence, and a reasonable fact finder would not conclude, that if true, Johnson's actions constitute deliberate indifference, which is fatal to Stepney's claim.

### III. Deliberate Indifference

Finally, there is no evidence that Johnson was even aware that she did not enter Stepney's proposed host sites into the OTS, let alone that she was deliberately indifferent in her alleged omission. The record evidence demonstrates that the complaints of which Johnson was aware pertained to Stepney's belief that he was entitled to be *discharged* because he had served his full sentence, not that she failed to enter his host sites into the OTS for investigation.

On November 18, 2011, when Johnson purportedly notified Stepney that Springfield disallowed his release, Stepney alleges that he "reminded her there were 581 days on the" mittimus sheet in his possession. Stepney contended that, "on a two-year sentence," an inmate "only" has to serve "18 months to max it out," so he believed that he had served nineteen months and three days beyond what was necessary. Stepney claims to have had two more discussions with Johnson on November 20 and on November 24, 2011.

Stepney testified that his next dialogue with Johnson took place on November 20, 2011, when she asked him to sign a parole request. Stepney did not sign the form

12

because, according to him, it was incorrectly dated November 18, 2011. During this interaction with Johnson, Stepney asserts that he again asked her why he was still in the IDOC's custody, emphasizing that he had "enough jail credits for a four-year sentence let alone a two-year sentence." Stepney believed that his mittimus credits were not "being correctly reflected on the sentence calculation," or that he was "not receiving full credit for all of" the jail credits reflected on his mittimus, arguing that he "was beyond [his] maximum discharge date by 33 days." To this, Johnson allegedly responded that Stepney did "not have the amount of days that" he thought.

On November 22, 2011, Stepney claims to have spoken with Counselor Kahn, who allegedly told him that there was no demographic information entered in the OTS for him. Stepney purportedly resubmitted the same addresses to Counselor Kahn that he gave to Johnson on November 18, 2011. However, the record does not indicate that Counselor Kahn or Stepney informed Johnson that she had not entered his information into the OTS. Instead, the record demonstrates that Counselor Kahn was the last individual to notice or know that he did not have any proposed host sites in the OTS, and that she caught this mistake just four days after his arrival at the NRC. Stepney's conversation with Counselor Kahn is particularly important because he claims to have met with Johnson two days later, for the last time, on November 24, 2011.

On November 24, 2011, Stepney claims that Johnson "made a second attempt to get [him] to sign the parole" request. Stepney alleges that the form was still dated

13

November 18, 2011, and he did not sign it for this reason. On this date, Stepney "testified that the only concern he raised with Johnson was that he believed he 'was beyond parole' and should have been released." As it turns out, Stepney's sentence was calculated correctly. Yet this is the only grievance that he raised *to Johnson*.

There is no evidence that Stepney questioned Johnson about his demographic information, attempted to confirm whether Counselor Kahn entered the addresses into the OTS following their talk, or requested that Johnson enter or investigate his proposed host sites. And, Stepney filed a grievance about Johnson's alleged failure to enter Maypole or 82nd into the OTS for the first time on February 27, 2012, while he was housed at Western Correctional Center, which was outside of Johnson's scope of duty at the NRC.

Thus, the record does not indicate that Johnson knew that Stepney did not have host sites entered into the OTS and failed to take remedial steps to address this shortcoming. *See Perrault v. Wis.*, 2015 WL 5032656, at *3 (W.D. Wis. Aug. 25, 2015) ("Deliberate indifference means that the officials were aware of the sentencing problem and the risk of unwarranted punishment but failed to act or took ineffectual action under the circumstances."). We agree with Johnson, who argues that the evidence shows that she began to assist Stepney "in the release process until she learned that he was being held as a parole violator," or that she was "negligent in entering or recording his host site," or both. (citing *Armato*, 766 F.3d at 721 (plaintiff "failed to show that the defendants deliberately held him beyond the term of his

14

incarceration;" defendants "believed releasing [plaintiff], a convicted sex offender, without a term of MSR, was contrary to state law"); *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983); *Crayton v. Duncan*, WL 2207191, at *3 (S.D. Ill. May 8, 2015); *Shesler v. Sanders*, 2014 WL 5795486, at *6 (N.D. Wis. Nov. 6, 2014)).

"[S]ummary judgment is 'the put up or shut up moment in a lawsuit, when a party must show that evidence it has that would convince a trier of fact to accept [his] version of the events.'" *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)). Stepney has failed to do so.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion and enters judgment in Johnson's favor and against Stepney. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 8/4/2017